**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **UNITED STATES,** ) | |
| ) | |
| v. ) | Criminal No. 3:07CR307 |
| ) | |
| **MICHAEL EDWARD LEE,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendant Michael Lee's (hereinafter "Defendant") motion to suppress the evidence (docket entry no. 10) seized from Defendant pursuant to what he asserts to have been an unlawful search and seizure by law enforcement. The matter has been briefed, evidence adduced, and argued. The motion is therefore ripe for disposition.

### I. Factual Background

Shortly before midnight on August 5, 2007, Army Private Stephen Smith and Private Christopher Irwin, stationed at Ft. Lee, Virginia, were assaulted while returning to their barracks on base. Private Irwin described the assailant as a black male with a skinny beard and mustache, approximately 5'8" tall, and wearing a white sleeveless t-shirt with blue jeans.

On the next morning at approximately 7:10 a.m., Fort Lee police officers responded to a call that a man had been seen on a nearby highway stumbling dangerously close to the road. The man was described as a black man wearing a white sleeveless shirt and jeans. When the officers approached Defendant, they smelled the odor of alcohol emanating from his person and observed that he was swaying.

One of the officers (Officer Madrid) conducted a frisk of Defendant for the reason, as he testified at the hearing on the motion, of his own personal safety and that of a second officer (Officer Napper) who had accompanied him to the scene. During the pat-down, Officer Madrid felt a small, hard box in Defendant's back pocket. Although he testified that the item did not feel like a weapon, he nevertheless reached into Defendant's pocket and retrieved the object. At that point, the officer observed that the item was, in fact, a hard pack of cigarettes. Officer Madrid then opened the pack and found inside a clear plastic bag containing a folded piece of white paper. The officer testified that he did not think that the plastic bag contained any weapon, but instead, based on his training and experience, he believed that it contained illegal contraband. Officer Madrid thereupon opened the clear plastic bag to expose the white paper inside, and then he unfolded the paper to discover a greenish plant substance inside the fold that he believed to be marijuana. The officer thereupon immediately placed Defendant under arrest for the offense of possession of marijuana and the material was later confirmed to be the controlled substance. Defendant moves to suppress the marijuana for use in evidence at trial on the basis that it was seized in violation of his Fourth Amendment right against unreasonable searches and seizures.

## II. Procedural History

Defendant has been indicted on four counts: Count One - unlawful assault resulting in the bodily injury to Private Stephen Smith; Count Two - assault on Private Christopher Irwin; Count Three - possession of a Schedule I controlled substance (the marijuana); and, Count Four - public intoxication. The Court entered an Order on October 31, 2007, granting the Government's uncontested motion to dismiss Counts One and Two, and Defendant pled guilty to Count Four of

the Indictment at the conclusion of the hearing on the instant motion.  Therefore, the only remaining charge is Count Three, the possession of the marijuana.

### III.  Analysis

In Terry v. Ohio, the United States Supreme Court held that when a law enforcement officer reasonably believes that "criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous . . . he is entitled . . . to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him."  Terry v. Ohio, 392 U.S. 1, 30 (1968).  Accordingly, a Terry "stop and frisk" "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a 'full' search . . . ."  United States v. Robinson, 414 U.S. 218, 228 (1973).

In Minnesota v. Dickerson, the U.S. Supreme Court addressed the purpose and scope of a Terry stop, stating that it is a limited search to allow an officer to investigate a possible crime without fear of violence.  Minnesota v. Dickerson, 508 U.S. 366, 373 (1993).  Most notably, the Dickerson Court held that "[i]f the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry and its fruits will be suppressed."  Id. Ruling on facts similar to the case before this Court, the Supreme Court determined that the police officer in Dickerson violated the Fourth Amendment when he continued to search the suspect's pocket, after concluding that it contained no weapons.  Id. at 378.

Here, even if a Terry "stop and frisk" of Defendant was justified (and the defense contends it was not where there was no basis to believe that Defendant was in possession of any dangerous item or otherwise constituted a threat to the safety of others), Officer Madrid's actions

exceeded the permissible scope of Terry when he continued to search the cigarette box after concluding that it did not contain any dangerous item(s).

The government contends that it was reasonable for the officers to believe that criminal activity was afoot when they approached Defendant due to his demeanor, the smell of alcohol emitting from his person, and his apparent inability to stand without swaying. The officers were further justified, the government asserts, in believing that Defendant may be armed and dangerous so as to justify a Terry search, since his physical appearance matched the general description provided by the victims of the assault the previous night. However, when Officer Madrid opened the cigarette pack at issue, he concluded that it did not contain any dangerous item, but instead it contained a clear plastic bag with a folded piece of paper inside. Even then he did not cease his search; rather, he proceeded to untie the plastic bag, remove the white piece of paper, and unfold it, at which point he discovered the marijuana which is the subject of Defendant's motion to suppress.

During Terry stops, officers are allowed to seize an item where, although it is clear that it is not a weapon, it is *immediately apparent* to the officer that the object may constitute or contain incriminatory material. Dickerson, 508 U.S. at 375. Officer Madrid testified that as a result of his training and experience, he *suspected* that the pack contained contraband, but such a general suspicion was not sufficient to justify a continued search of the contents of the pack, and then the plastic baggie, followed by the final search of the folded piece of paper. Accordingly, the continued search of the contents of the cigarette pack made an initially constitutional Terry "stop and frisk" an unlawful search. As a result, unless the search can be justified under a different

exception to the Fourth Amendment's warrant requirement, the marijuana that was found pursuant to the search must be suppressed for use in evidence.

A search incident to lawful arrest has long been recognized as an exception to the Fourth Amendment warrant requirement and case law clearly establishes a distinction between a Terry "stop and frisk" and a search incident to arrest:

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and . . . in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under the amendment.

Robinson, 414 U.S. at 235. Because the Court finds that the search of Defendant did not fall within the scope permitted by Terry, the ensuing search after the Terry pad down could only have been permissible if it constituted a search incident to lawful arrest.

Upon approaching Defendant, the officers arguably had probable cause to arrest Defendant for the offense of public intoxication. Under Virginia Code § 19.2-74(A)(2), public drunkenness constitutes an offense that warrants a custodial arrest.[1] Accordingly, the officers could have arrested Defendant for public intoxication, and then subsequently searched him incident to that arrest. That sequence, however, was not the way the events unfolded in the case. Rather, Officer Madrid first searched Defendant, and then arrested him for the possession of

---

[1] "[W]henever any person is detained by or is in the custody of an arresting officer for a violation of any county, city, or town ordinance or of any provision of this Code, punishable as a Class 3 or Class 4 misdemeanor or any other misdemeanor for which he cannot receive a jail sentence, *except as . . . to the offense of public drunkeness* the arresting officer shall take the name and address of such person and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice. Va. Code. § 19.2-74(A)(2) (emphasis added).


marijuana that was discovered in the folded piece of paper that was found inside the plastic baggie that was, in turn, inside the cigarette pack.  Officer Madrid testified at the hearing on the motion that Defendant was arrested for possession of marijuana, immediately after the discovery of the marijuana.[2]  Officer Madrid did not testify that Defendant was also arrested for the offense of public intoxication; rather, it appears that Defendant was later charged with that offense.

The Court of Appeals for the Fourth Circuit has held that a search which occurs prior to a formal arrest, but contemporaneous with the same, is justified if the officers had probable cause to arrest the individual for the offense conduct prior to conducting the search.  See United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991).  In this case, although the officers arguably had probable cause upon approaching Defendant to arrest him for public drunkenness, they did not do so, and they did not have probable cause upon first approaching Defendant to arrest him for the offense of marijuana possession, because, of course, they did not know at that juncture that he had marijuana on his person.  The United States Supreme Court has held that "a search incident to a lawful arrest may not precede the arrest *and* serve as part of its justification." Sibron v. New York, 392 U.S. 40, 67 (1968).  The search of Defendant did not constitute a constitutional search incident to arrest and, therefore, the marijuana found on Defendant's person constitutes the fruits of an illegal search.  Accordingly, Defendant's motion to suppress must be GRANTED.

An appropriate Order shall issue.

---

[2] The Court notes that the testimony of Officer Madrid conflicted with the testimony of Officer Napper regarding the offenses for which Defendant was arrested.  The Court, however, gives mor credence to Officer Madrid's testimony that Defendant was arrested for the offense of possession of marijuana where the arrest was effected immediately upon discovery of the substance and Officer Madrid was the officer who conducted both the search of Defendant and effectuated the arrest.

                                      /s/
                            DENNIS W. DOHNAL
                            UNITED STATES MAGISTRATE JUDGE

Richmond, Virginia
Date: 11/6/07